[Cite as *Cunningham v. Cunningham*, 2014-Ohio-1684.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

MELISSA ANN CUNNINGHAM,

    PETITIONER-APPELLEE,               CASE NO.  11-13-08

    v.

RYAN CUNNINGHAM,               O P I N I O N

    RESPONDENT-APPELLANT.

---

**Appeal from Paulding County Common Pleas Court**
**Domestic Relations Division**
**Trial Court No. DIS-11-091**

**Judgment Affirmed**

**Date of Decision:   April 21, 2014**

---

**APPEARANCES:**

    *John James Manore, III* for Appellant

    *Karen K. Gallagher*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Ryan P. Cunningham ("Ryan") appeals the July 10, 2013, judgment of the Paulding County Common Pleas Court denying Ryan's motion for modification of child support and ordering that attorney fees be awarded to Melissa A. Cunningham ("Melissa").

{¶2} The facts relevant to this appeal are as follows.  Ryan and Melissa were married on May 19, 2001.  (Doc. 1).  The parties had two children together, R.C., born in 2006, and M.C., born in 2007.

{¶3} On April 26, 2011, the parties filed a "Petition for Dissolution of Marriage," which contained a Separation Agreement and Shared Parenting Plan, providing for, *inter alia*, child support.  The support provision stated,

> **The Husband-Father shall pay child support in the amount of $500.00, plus a processing fee of 2%, for a total of $510.00 per month * * *[.]  This amount represents a deviation from the Ohio Child Support Guidelines due to the Wife-Mother's consent to the deviation.  * * ***
>
> **The parties intend that each of them will contribute equally to all expenses of the children * * *[.]  If at any time the expenses are such that one parent is paying in excess of one-half (1/2) of the children's expenses, the parties may file a Consent Judgment Entry modifying the child support obligation or if they cannot agree, either may petition the Court for a review of the child support obligation.**

(Doc. 1).  The documents also included a statement listing Ryan's income as $64,000.  (*Id.*)

-2-

{¶4} On June 9, 2011, a final hearing was held on the petition, and that same day a "Decree of Dissolution" was entered, approving the parties' separation agreement. (Doc. 7). The Decree specifically mentioned the above cited portions regarding child support and expenses, including the fact that the agreed support was a deviation from what would have otherwise been appropriate. (*Id.*)

{¶5} On July 11, 2011, Melissa filed a motion for ex parte order to terminate Ryan's parenting time, which included a request to re-calculate Ryan's child support obligation. (Doc. 8). Melissa attached affidavits to the motion, alleging that Ryan was not properly caring for the children. (Doc. 8). On July 12, 2011, a hearing was held on the ex parte motion with only Melissa present. Her motion was granted. (Doc. 12). On July 28, 2011, Ryan filed objections to the ex-parte order. (Doc. 17).

{¶6} On August 1, 2011, a hearing was held on Ryan's objections to the ex parte order and on the order itself. (Doc. 18). As a result of the hearing, Katrina Kight was appointed GAL for the children, and Ryan agreed to be placed on Secure Continuous Remote Alcohol Monitor ("SCRAM") "so that he can enjoy[] parenting time with the minor children while [Kight] is investigating the allegations raised by [Melissa]." (Doc. 19).

{¶7} On February 22, 2012, another hearing was held on the matter. (Doc. 26). Ryan did not attend the hearing, though his counsel was present. (*Id.*) Ryan

had, since the dissolution, moved to Florida, and would later state that he was advised by his counsel that his attendance was not necessary at this hearing. As a result of the hearing temporary orders were issued wherein Ryan's child support was recalculated, removing the previously agreed-upon deviation, increasing Ryan's support obligation to $1,161.73 per month.[1] (*Id*.) This figure was calculated using Ryan and Melissa's income figures from the tax form provided in the Separation Agreement as part of the dissolution process. (*Id*.) The forms listed Ryan's income as $64,000. The court reserved making its decision on whether the support order was retroactive, allowing Ryan to present information on the matter at a later hearing. (*Id*.)

{¶8} On August 3, 2012, Ryan filed a "Motion for Reallocation of Parental Rights and Responsibilities," a "Motion to Show Cause for Contempt," and a "Motion to Modify Child Support." (Doc. 32).

{¶9} On August 23, 2012, Melissa filed a motion requesting that she be awarded attorney fees. (Doc. 34). In the memorandum attached to the motion, Melissa argued that Ryan had been represented by three attorneys and had caused numerous delays in hearings on the motions in this case. (*Id*.)

{¶10} On September 17, 2012, Melissa filed a motion to dismiss Ryan's August 3, 2012, motions. (Doc. 37).

---

[1] A 2% administrative fee was added to this figure, making the total $1,184.96.

{¶11} On December 21, 2012, a "Consent Judgment Entry" was filed, wherein the parties agreed that Melissa should be designated Residential Parent and Legal Custodian of the children, and that Ryan would be designated Nonresidential parent. (Doc. 42). This followed the recommendation of the GAL, who was then released from this case. (*Id.*) The entry further stated that issues remaining to be determined by the court were Melissa's motion for attorney's fees and her motion for modification of child support, and Ryan's motion to show cause for contempt, and his motion to modify child support. (*Id.*)

{¶12} On February 11, 2013, a final hearing was held on the pending motions. (Doc. 51). At the hearing, Melissa and Ryan gave testimony, and Ryan also called his accountant, Kenneth Boroff.

{¶13} Melissa testified that Ryan was not reimbursing her for the children's expenses per their agreement and the court's prior order, and that Ryan was not consistent in paying his child support.

{¶14} Ryan testified that although he had previously resided in Paulding County at the marital residence, since the dissolution he had moved onto a boat in Florida.[2] (Tr. at 10). Ryan testified that he had been an active farmer, but he had transitioned to renting out his farmland. He also testified that he had sold several tracts of land, and some of his old farming equipment, totaling in the hundreds of

---

[2] Ryan consistently testified that he moved onto a boat. Melissa, both at the final hearing and on appeal, characterized the boat as a "yacht."

thousands of dollars.[3]  However, Ryan testified that due to losses in previous years carrying forward on his taxes, and due to depreciation, his income was lower than what was stated in the dissolution form, and that the amount he was paying in child support should have been recalculated based on the income figures in his federal tax forms.

{¶15} Boroff, Ryan's accountant, testified that Ryan had net operating losses carrying forward from prior years of farming operations.  Boroff testified that Ryan had a gross income from farming in 2012, prior to factoring in depreciation, of 80,000.  He testified that the prior year, the year the court used Ryan's $64,000 income figure, Ryan had a negative income for tax purposes.

{¶16} After hearing the testimony of the parties, the court requested that the parties submit written closing arguments.  Ryan's closing arguments were filed March 8, 2013, and Melissa's were filed March 11, 2013.  (Docs. 49, 50).

{¶17} On July 10, 2013, the trial court filed its entry on the matter.  (Doc. 51).  In a lengthy opinion making findings of fact, outlining the procedural history, and detailing legal conclusions, the trial court ordered that Melissa was within her rights to petition the court for modification of child support, that the court's order of child support was retroactive, that Ryan's motion for modification of child

---

[3] Melissa also testified that she had sold a rental home for $73,500.

support was denied, that Ryan's contempt motion was overruled, and that Melissa's motion for attorney fees was granted. (*Id*.)

{¶18} It is from this judgment that Ryan appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT THE APPELLANT, RYAN CUNNINGHAM WAS NOT A FARMER DURING THE TAX YEAR 2011.**

**ASSIGNMENT OF ERROR 2**
**THE COURT ERRED IN COMPUTING THE APPELLANT'S "GROSS INCOME" FOR PURPOSES OF THE CALCULATION OF CHILD SUPPORT, BY FAILING TO DEDUCT HIS CARRY FORWARD SCHEDULED DEPRECIATION STEMMING FROM HIS ORDINARY AND NECESSARY BUSINESS EXPENSES.**

**ASSIGNMENT OF ERROR 3**
**THE COURT ERRED IN IT'S AVERAGING OF THE APPELLANT'S INCOME BY UTILIZING THE SUM OF $64,000.00 FOR THE TAX YEAR 2010, AND THE SUM OF $80,000.00 FOR THE TAX YEAR 2011.**

**ASSIGNMENT OF ERROR 4**
**THE COURT ERRED WHEN IT REFUSED TO ACCEPT ANY EVIDENCE OF HIS ACTUAL INCOME IN MODIFYING THE APPELLANT'S CHILD SUPPORT OBLIGATION EFFECTIVE JULY 11, 2011, BY FINDING THAT THE COURT HAD ONLY RESERVED JURISDICTION TO ALLOW RESPONDENT THE OPPORTUNITY TO PRESENT EVIDENCE OF HIS PAYMENT OF CERTAIN CHILD EXPENSES.**

**ASSIGNMENT OF ERROR 5**
**THE TRIAL COURT ERRED WHEN IT DID NOT MODIFY THE APPELLANT, RYAN CUNNINGHAM'S CHILD SUPPORT OBLIGATION EFFECTIVE AUGUST 3, 2012.**

**ASSIGNMENT OF ERROR 6**
**THE COURT ERRED IN ITS' [sic] AWARD OF ATTORNEY FEES TO PETITIONER/APPELLEE UNDER O.R.C. SECTION 3105.73(B).**

{¶19} We elect to address the first two assignments of error together.

*First and Second Assignments of Error*

{¶20} In Ryan's first assignment of error, he argues that the trial court erred when it found that Ryan was not a farmer during the tax year 2011. In Ryan's second assignment of error, he argues that the trial court erred in computing his gross income for child support purposes. Specifically, Ryan contends that the trial court erred by not deducting depreciation from his income for what he argues were "ordinary and necessary business expenses."

{¶21} An appellate court reviews a trial court's decision in matters related to child support under an abuse of discretion standard. *Evans v. Richardson*, 10th Dist. No. 01AP-1328, 2002-Ohio-3555, ¶ 9 citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, (1989). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, an appellate court is not free to merely

substitute its judgment for that of the trial court, but must presume that the findings of the trial court are correct. *Richardson*, *supra*, ¶ 9, citing *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138 (1990).

{¶22} In this case it is not disputed that Ryan is self-employed. The calculation of child support for individuals who are self-employed is defined in R.C. 3119.01(C)(13), as follows.

> **"Self-generated income" means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.**

{¶23} Thus, based on the statute, "in determining the gross income of a self-employed parent, the trial court must deduct the ordinary and necessary expenses incurred in the generation of gross receipts." *Janecek v. Marshall*, 11th Dist. No. 2010-L-059, 2011-Ohio-2994, ¶ 13, citing *Foster v. Foster,* 150 Ohio App.3d 298, 303, 780 N.E.2d 1041, 2002–Ohio–6390. Ordinary and Necessary business expenses are defined in R.C. 3119.01(C)(9), as follows.

> **(9)(a) "Ordinary and necessary expenses incurred in generating gross receipts" means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity.**

**(b) Except as specifically included in "ordinary and necessary expenses incurred in generating gross receipts" by division (C)(9)(a) of this section, "ordinary and necessary expenses incurred in generating gross receipts" does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.**

{¶24} Revised Code 3119.01(C)(9) includes depreciation of business equipment, but "does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." R.C. 3119.01(C)(9)(b). These other types of depreciation deductions are excluded so that "a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." *Baus v. Baus*, 72 Ohio App.3d 781, 784 (1991); *Foster v. Foster,* 150 Ohio App.3d 298, 2002-Ohio-6390, at ¶ 19. "Absent evidence that the depreciation deduction represents actual cash expenses incurred in the year that the deduction was taken, R.C. 3119.01(C)(9) mandates that the depreciation deduction be included in the parent's gross income for that year." *Foster* at ¶ 23; *In re Custody of Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649 (2nd Dist.).

{¶25} Lastly, in determining whether depreciation is an ordinary and necessary expense incurred in generating gross receipts for a business and, therefore, whether it may be deducted from gross income for child support purposes, "it is not the duty of the trial court to ferret out those expenses that

qualify as ordinary and necessary. Rather, it is the duty of the obligor to assert that certain items are exempt from inclusion as gross income pursuant to this exception." *In re Sullivan,* 167 Ohio App.3d 458, 465, 2006–Ohio–3206; *Janecek v. Marshall*, 11th Dist. No. 2010-L-059, 2011-Ohio-2994, ¶ 19.

{¶26} On appeal, Ryan contends that he was a "farmer" and that the trial court erred in finding that the depreciation he was claiming did not constitute "ordinary and necessary" business expenses for him as a "farmer." In making this argument, Ryan contends that the following findings of the trial court were erroneous regarding Ryan's employment and whether Ryan's depreciation should have been applied in calculating his income for child support purposes.

> **Respondent is a self-employed farmer who owns approximately 807 acres of farmland. While the Respondent formerly planted and harvested his land himself, Respondent testified that he now sold all of his farm machinery and has chosen to cash rent his land to another farmer. This allows Respondent to produce income from the land that he owns while living in Florida on his boat.**
>
> **\* \* \***
>
> **While the court believes that the items listed on the depreciation schedule would be ordinary and necessary and directly related to the operation of a farming business for one who is actually engaged in the operation of farming or livestock production, the court does not believe that the listed items are ordinary and necessary for one, like Respondent, who testified that he simply owns land from which crops are being harvested by a farmer contracted by Respondent to produce those crops.**

(Doc. 51).

-11-

**{¶27}** Looking first at Ryan's claim that the trial court erred by finding that he was no longer a farmer, at the final hearing, Ryan testified repeatedly that he was a "farmer." However, he also testified, as did his accountant, that he had transitioned in 2011 from actually doing the farming himself, to cash-renting the land that he owned for others to farm it. Ryan testified that he "managed" the farm from his new home in Florida, and that he had also sold his farming equipment. He was, per his own testimony, not physically farming the land himself.

**{¶28}** Regardless of whether Ryan's "management" of a farm classifies him as a "farmer" in the same category as one physically farming the land, we cannot find that the trial court abused its discretion in finding that Ryan "simply owns land from which crops are being harvested" as it is an accurate characterization of the testimony. We would note that Ryan's employment classification as a "farmer" is really only relevant in this appeal inasmuch as the trial court found that because Ryan was not engaged in the actual operation of farming, the depreciation he was claiming as a deduction did not constitute an ordinary and necessary business expense. As we can see no abuse of discretion in the trial court's findings and conclusions on this issue, the first assignment of error is not well-taken and is, therefore, overruled.

{¶29} With regard to Ryan's second assignment of error, and his claim that the trial court erred by failing to deduct "ordinary and necessary" business expenses of depreciation from Ryan's income, at the final hearing, testimony was given that Ryan provided the amount of his gross income for 2011 to his accountant, Kenneth Boroff, in the amount of $80,000.[4] Boroff testified that Ryan had depreciation deductions in 2011 amounting to $52,604, making his income for tax purposes from the 2011 farming operation $27,396.[5]

{¶30} When Boroff was asked whether the amount of depreciation deducted was from items purchased in 2011, Boroff testified that the deductions were for items acquired in previous years, continuing deductions that had been taken in 2010, 2009, and prior, when Ryan "had the whole farming operation." (Tr. at 201, 210). The exhibits in the record reaffirm Boroff's testimony. There were over 50 items listed on Ryan's 2011 depreciation schedule, which included items dating as far back as 1998 and ended with items purchased in July of 2010.[6] No items listed on the schedule were purchased in 2011.

{¶31} Ultimately the trial court found that Ryan's depreciation deductions for items purchased prior to 2011 should not be included when computing Ryan's income for the purposes of child support as Ryan was merely managing his farm

---

[4] The trial court used the income Ryan stated in his dissolution forms for 2010, which was $64,000.
[5] Ryan had sold several tracts of land in 2011, and had income from that, but the trial court determined, despite Melissa's arguments to the contrary, that those sales should not be considered for child support purposes.
[6] There is actually one listing for depreciation dating back to 1995, but no amount depreciated for it in the schedule.

rather than actively farming it himself. The trial court reasoned that when Ryan shifted his focus to managing the farm, the depreciation could no longer be considered "ordinary and necessary." Therefore, the court concluded that while factoring in the depreciation *may* have been proper for an active farmer, it was not proper in this case, where Ryan had ceased active farming. As the deductions reflect depreciation on items that Ryan used while he was an active farmer rather than merely managing his farm, we cannot find that the trial court erred in its determination. This is particularly true given that Ryan has in no way established that any of the items listed in the depreciation schedule are used or essential in his position managing the farms, and it is his burden to establish those facts. Moreover, we would also note that Ryan testified at the hearing that since the inception of this case, "[a]ll the equipment's been sold." (Tr. at 29). It is not clear, whether this includes any or all of the equipment listed on the depreciation schedule.

{¶32} Notwithstanding the trial court's findings, there is a separate basis for determining that factoring in depreciation may not have been appropriate in this case. As was clear from Boroff's testimony, the depreciation deductions were not for recently purchased equipment, or for "ordinary necessary" cash expenses occurring *in the calendar year* of 2011 for which Ryan was claiming the deduction on his federal income tax returns. The fact that the expenses were not made in the

calendar year of 2011 allows the trial court to conclude that the expenses were not "ordinary and necessary" under the statute. *Wenger v. Wenger*, 9th Dist. No. 02CA0065, 2003-Ohio-5790, ¶¶ 30-31, citing *Foster*, *supra*, at ¶ 20; *See also Buening v. Buening*, 3d Dist. Mercer No. 10-08-04, 2008-Ohio-6579, ¶ 10 (wherein it was determined that the depreciation was not merely for tax purposes where it reflected actual cash expenditures in that year). Therefore, on this separate basis, the trial court could properly have concluded that factoring in the depreciation was not proper in this case.

**{¶33}** Accordingly, for these reasons, Ryan's first and second assignments of error are overruled.

*Third Assignment of Error*

**{¶34}** In Ryan's third assignment of error, he argues that the trial court erred by averaging Ryan's income for child support purposes. Specifically, Ryan contends that the trial court improperly determined Ryan's income to be $64,000 for 2010 and $80,000 for 2011, and further, that the court erred in averaging these figures as they were not reflective of Ryan's actual income.

**{¶35}** At the outset, we would note that "'the purposes underlying the Internal Revenue Code and the child support guidelines are vastly different. The tax code permits or denies deduction from gross income based on myriad economic and social policy concerns which have no bearing on child support. The

child support guidelines in contrast are concerned solely with determining how much money is actually available for child support purposes. * * *.'" *Amlin v. Amlin*, 2d Dist. No. 2008 CA 15, 2009-Ohio-3010, ¶ 70, quoting *O'Herron v. Tomson,* Montgomery App. No. 19111, 2002-Ohio-1796. We also note that Ryan concedes that if the income of a party is inconsistent, it may be appropriate for a trial court to average the party's income. (Appt's Br. at 14); *Rhoades v. Priddy-Rhoades*, 10th Dist. No. 06AP-740, 2007-Ohio-2243, ¶ 11.

{¶36} In this assignment of error, Ryan first contends that the trial court abused its discretion by determining Ryan's income to be $64,000 for 2010. The trial court took this figure from the documents Ryan jointly submitted to the trial court along with Melissa during the dissolution process. Despite voluntarily submitting this income amount, Ryan testified at the final hearing nearly two years later, that it was not reflective of his income for 2010. Ryan argues instead that the trial court should have considered his income in his federal tax forms for the year, which was negative ($67,659.00). However, as Ryan voluntarily stipulated to an income of $64,000 as part of the dissolution in 2010 he cannot now say the trial court abused its discretion in relying on that income amount in these proceedings. Accordingly we cannot find that the trial court erred in using this figure.

{¶37} Ryan next argues that the trial court erred in determining that his income for 2011 was $80,000. Ryan renews his argument from the previous assignment of error that depreciation should have been factored into his income, and that the trial court should have used the income tax figure of $27,396.00. As we have already determined that the trial court did not err in choosing not to deduct the depreciation from Ryan's gross income for 2011, we cannot find that the trial court erred in using the $80,000 income figure Ryan provided to his accountant. Further, as Ryan has conceded that a trial court generally has discretion to average the income of a parent whose yearly earnings are unpredictable, we cannot find that the trial court erred in averaging the $80,000 figure and the $64,000. Accordingly, Ryan's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶38} In Ryan's fourth assignment of error, he argues that the trial court erred by "refus[ing] to accept any evidence of [Ryan's] actual income in modifying [Ryan's] child support obligation." (Appt.'s Br. at 16). More specifically, Ryan contends that the trial court ignored evidence of Ryan's actual income on the basis that it had already determined Ryan's income at an earlier hearing.

{¶39} In this case, as previously noted, Ryan submitted his income as $64,000 as part of the dissolution process in 2010. The parties then agreed that Ryan would pay child support in the amount of $500 per month, provided that Ryan pay half of the children's expenses. The dissolution decree specifically mentioned that the agreed amount of child support was a deviation from the standard child support guidelines.

{¶40} In July of 2011, Melissa filed a motion requesting, *inter alia*, that the child support be recalculated. Melissa testified at the final hearing that Ryan was not paying his share of expenses for the children.

{¶41} A hearing was held on February 22, 2012, which Ryan did not attend, but his counsel was present. As a result of the hearing, temporary orders were issued, stating, in pertinent part,

> **[Ryan's] child support obligation has been recalculated and the prior Order is modified so that the [Ryan] shall pay child support in the amount of $1,161.73, plus a processing fee of 2%, for a total of $1,184.96 per month effective January 1, 2012.**
>
> **＊＊**
>
> **The Court reserves the issue of the retroactivity of the child support obligation to the date of filing the Motion in July, 2011, which issue shall be heard at the time of final hearing.**

(Doc. 26). The recalculation of Ryan's child support was done by simply removing the previously agreed deviation, utilizing the income figures the parties jointly submitted as part of the dissolution process.

{¶42} After the final hearing, in the court's judgment entry, the court made the following findings, which Ryan takes issue with on appeal in this assignment of error.

> **This Court specifically reserved jurisdiction over the issue of whether the increased child support should date back to July 11, 2011, which was the date that Petitioner Melissa Cunningham filed her request for the child support to be modified. At the time when this Court ordered the child support to increase due to the removal of the deviation, the Respondent had failed to appear for a pre-trial, although not excused to do so. Respondent's attorney appeared on Respondent's behalf.** *The court reserved jurisdiction in order to allow the Respondent to present evidence that he had in fact been paying one-half of the children's expenses as ordered.* **In fact, however, Petitioner testified at the February, 2013 hearing that Respondent had not paid his one-half of the children's expenses since the beginning and the Respondent did not present any evidence to dispute that claim.**

(Emphasis added.)

{¶43} On appeal, Ryan contends that the trial court effectively misinterpreted its earlier temporary order, citing the italicized portion as contradictory. However, we do not find that the italicized portion is in any way contradictory to the trial court's earlier order, as the court reserved the issue of retroactivity in its prior entry. The trial court may have considered whether Ryan had been paying his expenses to be a key determination in the retroactivity of Ryan's child support. Accordingly, Ryan's argument is not well-taken.

**{¶44}** Ryan also contends the trial court erred by not effectively re-hearing what was decided regarding the removal of the child support deviation at the February 22, 2012 hearing. He contends that the trial court did not allow Ryan to present evidence of his actual income. However, testimony was presented at the final hearing regarding Ryan's income including the introduction of Ryan's tax records. Even with Ryan's tax records, the trial court still found Ryan's income to be $64,000 for the year of 2011, an amount he had previously agreed to. Under these circumstances, we cannot find that the trial court erred, as the trial court reserved the issue of retroactivity, Ryan did get to present testimony regarding his income and the trial court had all of the pertinent information before it to make a determination.

**{¶45}** Accordingly, Ryan's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶46}** In Ryan's fifth assignment of error, he argues that the trial court erred in failing to modify his child support obligation. Specifically, Ryan asserts that the trial court's "litany of error(s) [sic] in the determination of his 'gross income' for purposes of the calculation of child support as addressed in Assignments of Error II, and III above, have resulted in trial court's erroneous conclusion."

{¶47} However, as we have not found any error in the trial court's conclusions, let alone a "litany" of errors, we cannot find this assignment of error well-taken. Accordingly, Ryan's fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶48} In Ryan's sixth assignment of error, he argues that the trial court erred by awarding attorney fees to Melissa. Specifically, Ryan contends that there was no evidence that Ryan's actions caused significant delay, and that the trial court's decision was an abuse of discretion.

{¶49} "'An award of attorney's fees in a domestic relations action is committed to the sound discretion of the trial court.'" *Cichanowicz v. Cichanowicz*, 3d Dist. Crawford No. 3-13-05, 2013-Ohio-5657, ¶ 92, quoting *Flowers v. Flowers,* 10th Dist. Franklin No. 10AP1176, 2011–Ohio–5972, ¶ 21, citing *Stuart v. Stuart,* 144 Ohio St. 289 (1944) (additional citation omitted). "This court will not reverse an award of attorney fees absent a finding that the trial court abused its discretion." *Id.,* citing *Stuart.*

{¶50} On August 23, 2012, Melissa filed a motion requesting that she be awarded attorney fees. (Doc. 34). In the memorandum attached to the motion, Melissa argued that Ryan had been represented by three attorneys and had caused numerous delays in hearings on the motions in this case. (*Id.*) The issue of attorney fees was heard at the final hearing in this case.

{¶51} The trial court stated the following in its entry with regard to its award of attorney fees, after citing the proper legal standards.

> **In the present case, an award of attorney fees is appropriate. Although Petitioner filed the initial motion in July, 2011 just one month following the granting of the parties decree of dissolution, it was the indecisive and irrational behavior on the part of the Respondent which caused significant delay in this case. Had the issues raised in Petitioner's motion simply been set for hearing, the case would have likely been resolved by October, 2011. However, Respondent's irrational and uncontemplated move to the State of Florida, his initial indecisiveness as to whether he was going to remain in Florida, his decision to reside on a boat rather than secure conventional housing, his decision to fire his initial attorney, the failure of Respondent to present himself at the February, 2012 hearing, his delay in finding new counsel in June, 2012, although ordered by the Court to do so, leads this Court to find that it is equitable for the Respondent to pay a reasonable amount of attorney fees during the time in which Respondent's behavior was causing delay in the case, specifically from November 1, 2011 through July 31, 2012. Pursuant to Petitioner's Exhibit #11, a copy of Petitioner's attorney fee bill from her attorney Karen Gallagher, shows that during the time frame from November 1, 2011 through July 31, 2012, Petitioner was billed for approximately 16.8 hours. Using the rate of $150.00 per hour, times the attorney fees incurred during that time (16.8 hours) amounts to $2,520.00. It is therefore ORDERED, ADJUDGED AND DECREED that Respondent shall pay to the Petitioner the sum of $2,520.00 which represents this Court's equitable award of attorney fees.**

{¶52} On appeal, Ryan contends that the trial court showed prejudice and bias by stating that Ryan's move to Florida was "irrational and uncontemplated." Ryan also argues that there was no evidence in the record that his retention of new counsel in November of 2011 caused any delay in the litigation. While Ryan

admits that he failed to appear at a hearing, he contends that he was instructed by his attorney at the time not to attend. He argues that there is no evidence that his absence caused delay. Finally, Ryan argues that it was not his fault that his second counsel chose to withdraw due to a conflict, and that his waiting thirty-five days beyond the court's deadline to secure new counsel did not delay any scheduled hearings.

{¶53} During the course of the proceedings, it is not disputed that Ryan had three attorneys. He dismissed his first attorney. Through no fault of his own, Ryan's second attorney withdrew due to a conflict six days prior to the scheduled May 25, 2012, final hearing in this case. The final hearing was then vacated and Ryan was given until June 29, 2012 to retain new counsel or proceed *pro se*. The deadline passed, and Ryan did not retain new counsel until August 3, 2012, over a month after the court's deadline.

{¶54} It is also not disputed that Ryan did not attend a scheduled hearing, wherein his presence was not excused, despite Ryan's testimony that his attorney at that time told him he did not have to be at the hearing. Ryan was in Florida at the time of the hearing, which could explain some of the court's comments regarding Ryan's move to Florida, and his move onto a boat. In addition, although not specifically cited by the trial court, Ryan refused to wear the SCRAM monitor that he agreed to do at the inception of this case while the GAL investigated

Melissa's allegations. (Tr. at 41). Thus there is some support for the findings made by the trial court in support of its decision to award Melissa *part* of her attorney's fees.

{¶55} Regarding the actual amount and value of attorney fees, at the final hearing, Melissa introduced a document containing the hours she was billed by her attorney prior to the final hearing. The bill, which was itemized and detailed to tenths of hours, indicated that Melissa had been billed for 59.3 hours, for a total of $11,719.42 prior to the final hearing.[7] The bill contained different hourly rates ranging from $135 to $205. The majority of the hours, 53.2, consisted of an hourly rate of $195 and $205. Only 3.2 hours total were billed at the hourly rate of $150 or the lower rate of $135.

{¶56} In its award of attorney fees, the trial court used the hourly rate of $150, which was one of the lowest rates listed on the bill. In addition, Melissa was awarded fees only covering the limited times where the court felt Ryan had caused unnecessary delay. This included the period where he failed to show up to a hearing and delayed hiring a new counsel.

{¶57} As the award of attorney fees is within the sound discretion of the trial court, and the trial court's decision to award a portion of Melissa's attorney's fees is supported in the record, we cannot find in these specific circumstances that

---

[7] This figure included various copying fees, which were also detailed.

the trial court abused its discretion. Accordingly, Ryan's sixth assignment of error is overruled.

**{¶58}** For the foregoing reasons Ryan's assignments of error are overruled and the July 10, 2013, judgment of the Paulding County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., concurs.**

**/jlr**

**ROGERS, J., Dissents in Part and Concurs in Part.**

**{¶59}** I respectfully dissent from the opinion of the majority as to the award of attorney fees. Although the majority is correct in noting that a court of appeals will not overturn an award of attorney fees absent an abuse of discretion, I believe there was a lack of evidence in the record on which the trial court could base its finding.

**{¶60}** A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may

not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶61}** "Before awarding attorney fees, a trial court must determine the reasonableness of the time spent on the matter and the reasonableness of the hourly rate." *Hubbard v. Hubbard*, 3d Dist. Defiance No. 4-08-37, 2009-Ohio-2194, ¶ 12, citing *Bagnola v. Bagnola*, 5th Dist. Stark No. 2004CA00151, 2004-Ohio-7286. Evidence must be presented that the hours expended on the case by the attorney were necessary and that the rates are comparable to those in the community for similar services by attorneys of a similar level of skill. *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No. 6-12-06, 2013-Ohio-144, ¶ 20. The party requesting attorney fees carries the burden of proof to show that the request was reasonable. *Id.* at ¶ 22. Trial courts should not speculate as to whether the hours were necessary or that the fee itself is reasonable. *Id.* at ¶ 28, 31.

**{¶62}** Here, the only evidence offered regarding the reasonableness of the attorney fees came from Mrs. Cunningham. She testified as to the financial toll the litigation had taken on her and as to the amount she still owed. However, on cross examination, she could not identify which parts of the bill were a result of any alleged delay on the part of Mr. Cunningham. She also stated that she did not

know whether any additional work was done as a result of any alleged delay by Mr. Cunningham, or if the amount of time expended by her attorneys would have been the same. On re-direct, she discussed the different delays that occurred, but did not testify as to what additional hours were expended by her attorney in response to these delays.

{¶63} Nor is there any evidence on record that the fee charged by Mrs. Cunningham's attorney was reasonable. While the bill itself is on record, there was no evidence presented that the rate charged was comparable to rates of other attorneys in the area. Thus, the reasonableness of the attorney fees was based upon the trial courts speculation, not on the evidence in the record.

{¶64} Accordingly, I would sustain Mr. Cunningham's sixth assignment of error and reverse the award of attorney fees.

/jlr